UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 20-2927 (JDB) |
| UNITED STATES POSTAL SERVICE, | ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF JANINE CASTORINA

I, Janine Castorina, make the following Declaration in lieu of affidavit in accordance with the provisions of 28 U.S.C. § 1746. I understand that my declaration may be introduced into the record of the above captioned action, or any other grievance, administrative proceeding, or suit pending in a court of law.

1. I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2. I currently hold the position of Chief Privacy and Records Management Officer for the United States Postal Service. Prior to holding my current position, I was an Attorney in the Commercial and Appellate Litigation section, from October 2011 to March 2016.

3. In my official capacity as Chief Privacy and Records Management Officer, I am responsible for establishing Postal Service policies relating to information disclosure, privacy, and records management; ensuring compliance with privacy and records statutes, regulations, and policies; and providing oversight and supervision of the Postal Service Privacy and Records Office, which, among other things, receives, tracks, and advises postal officials on how to respond

1

to FOIA requests.  My responsibilities also include managing and coordinating the Postal Service's response to certain litigation arising under the FOIA, including the present complaint.

4. As the Chief Privacy and Records Management Officer, it is my responsibility, and that of my group within the Postal Service, to assist internal stakeholders with responses to FOIA requests and to help those stakeholders understand and navigate the FOIA exemptions—including Exemption 3 in conjunction with Section 410(c)(2).  To that end, I must be conversant with the Postal Service's policies and practices relating to management of proprietary and commercial information.

## The FOIA Request, Appeal, and Litigation

5. By correspondence dated and received August 11, 2020, Plaintiff submitted a Freedom of Information Act ("FOIA") request under 5 U.S.C. § 552.  The requester sought: 1. all ethics agreements, records of recusals and screening arrangements pertaining to Postmaster General Louis DeJoy, 2. all other records identifying matters from which Mr. DeJoy must recuse, 3. all records of guidance provided to Mr. DeJoy regarding his recusal obligations by USPS ethics officials, 4. all other records identifying financial interests from which Mr. DeJoy or his spouse must divest, and 5. all records of communications between Mr. DeJoy and USPS officials regarding his reported purchase of a "call option" for Amazon stock on June 24, 2020.

6. Plaintiff's FOIA request was assigned number 2020-FPRO-01619.

7. On September 9, 2020, an initial decision was issued by Jessica Brewster-Johnson. Mrs. Brewster-Johnson is the Senior Ethics Counsel for the United States Postal Service. In this decision, it was noted that three pages of recusal agreements, one page of recusal guidance, nine of pages of certificate of divestiture documents, and one page of recusal guidance were located, pursuant to FOIA requests 1, 3 and 4. All responsive withheld in full pursuant to Exemptions 5

and 6 of the FOIA. A search was conducted for records responsive to request number 2 and no additional responsive documents were located, beyond those already located in response to the previous requests. No responsive documents were located in conjunction with the search for records with regard to request number 5.

8. On September 10, 2020, the Plaintiff submitted an appeal of the initial decision. Plaintiff asserted that the records were improperly withheld and that the search was inadequate.

9. In an opinion dated October 23, 2020, Plaintiff's appeal was rejected, and this lawsuit ensued.

## Adequacy of Search

10. The Postal Service conducted a thorough search for records. The Postal Service searched the electronic and paper files of the Ethics Office and the Postmaster General's office for any responsive records within the scope of the request. This search uncovered limited responsive records to request numbers 1, 3 and 5; no additional responsive records to request number 2, beyond those located for the previous requests, and no responsive records to request number 5. The individuals at the Postal Service familiar with the subject matter of this request, including Mrs. Brewster-Johnson, did not expect to find responsive records as to request number 5. *See, e.g.*, *Am.-Arab Anti-Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, 516 F.Supp.2d 83, 88 (D.D.C. 2007) (because agency employee, due to his position, was "presumed able to familiarize himself with what statistics" the agency maintained, his explanation that the agency did not maintain a particular type of statistical data was sufficient to justify why a search for responsive records was not even necessary). As the Senior Ethics Counsel, Mrs. Brewster-Johnson is in the best position of any person at the Postal Service to know and understand what records are available in response to Plaintiff's request. As the Senior Ethics Counsel, Mrs. Brewster-Johnson is in a

position to have reviewed all ethics items that are generated. Moreover, she is responsible for storing and archiving all ethics advice and matters. Mrs. Brewster-Johnson searched in all network locations for the responsive records and also reached out to other individuals, who might have responsive documents.

**Exemptions Relied Upon**

11.     **Exemption 3:** Congress has repeatedly instructed that the Postal Service be run more like a private business, including through passage of several pieces of legislation.  For example, the Postal Accountability and Enhancement Act of 2006 (P.L. 109-435) granted the Postal Service significantly more flexibility with respect to competitive products in order to the agency the ability to compete fairly within the marketplace.  Most relevantly, Congress enacted the Postal Reorganization Act of 1970, which abolished the United States Post Office Department and reorganized the Postal Service to operate more like a private enterprise.  *See Franchise Tax Bd. v. USPS,* 467 U.S. 512, 519–520 (1984)  ("In passing the Postal Reorganization Act of 1970 . . . Congress [] indicated that it wished the Postal Service to be run more like a business than had its predecessor, the Post Office Department.").  The Postal Reorganization Act provided the Postal Service with a broad exemption under FOIA, enacted at 39 U.S.C. § 410(c)(2), which allows the Postal Service to withhold business-sensitive information under best business practices.

12.     Exemption 3 allows an agency to withhold information that is "specifically exempted from disclosure by statute."   5 U.S.C. § 552(b)(3).  The Postal Service has long understood the Postal Reorganizational Act to constitute a withholding statute for purposes of Exemption 3 under FOIA.  Courts have routinely upheld the Postal Service's right to withhold materials that fall within the scope of the Act under FOIA.  Section 410(c)(2) permits the Postal Service to withhold "information of a commercial nature, including trade secrets, whether or not

4

obtained from a person outside the Postal Service, which under good business practice would not be publicly disclosed." 39 U.S.C. § 410(c)(2). Information of a commercial nature under Section 410(c)(2) is broadly defined by Postal Service regulations to include all information that "relates to commerce, trade, profit, or the Postal Service's ability to conduct itself in a businesslike manner." 39 C.F.R. § 265.14(b)(3).

13. In determining whether particular information is commercial in nature, the Postal Service considers six factors relating to whether the information is more akin to its role as a business entity, a competitor in the market, or a provider of basic public services. *See* 39 C.F.R. § 265.14(b)(3)(i). The factors are as follows:

> **(A)** Relates to products or services subject to economic competition, including, but not limited to, "competitive" products or services as defined in 39 U.S.C. 3631, an inbound international service, or an outbound international service for which rates or service features are treated as nonpublic;
>
> **(B)** Relates to the Postal Service's activities that are analogous to a private business in the marketplace;
>
> **(C)** Would be of potential benefit to individuals or entities in economic competition with the Postal Service, its customers, suppliers, affiliates, or business partners or could be used to cause harm to a commercial interest of the Postal Service, its customers, suppliers, affiliates, or business partners;
>
> **(D)** Is proprietary or includes conditions or protections on distribution and disclosure, is subject to a nondisclosure agreement, or a third party has otherwise expressed an interest in protecting such information from disclosure;
>
> **(E)** Is the result of negotiations, agreements, contracts or business deals between the Postal Service and a business entity; or
>
> **(F)** Relates primarily to the Postal Service's governmental functions or its activities as a provider of basic public services.

The Postal Service considered each factor here in determining whether information related to the Postmaster General's Certificate of Divestiture documents and documents related to the recusal requirements within the ethics rules constituted information of a commercial nature.

14. Protecting sensitive commercial information is critical to the Postal Service's ability to generate revenue in a highly competitive marketplace and allows the Postal Service to operate more like a business, as Congress intended. Disclosure of information that reveals how the Postal Services thinks about its business opportunities, contracts, or the finances of its officers – other than those finances that are required to be public – would provide another company with a competitive advantage over the Postal Service, thereby disadvantaging the Postal Service and harming its business.

15. There are requirements that certain officers, including the Postmaster General, make certain financial information public. That has been done and that information is viewable to the public. Financial information that individuals submit to Postal Service ethics officials for the purpose of complying with ethics regulations, is not all public and should not be. This information concerns the finances of third parties and is thus "commercial information" within the scope of this provision. In addition, it would be difficult for ethics officials to procure information from individuals that is necessary to comply with these regulations, and perhaps even difficult to attract qualified candidates to serve in particular positions, if the Postal Service could not afford some degree of protection to financial information submitted to ethics officials or some degree of certainty as to what information is protected and what is not. The ethics rules state what must be public, to take that certainty away and make other things – not published by Office of Government Ethics ("OGE") – public harms the Postal Service and would put the Postal Service at a competitive disadvantage.

16. Accordingly, this information would not be disclosed under good business practice by other businesses and thus, the information contained in these deliberative and preliminary documents is properly withheld under Exemption 3 in conjunction with 410(c)(2).

17.     **Exemption 5:** Exemption 5 permits the Postal Service to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. § 552(b)(5). Courts have found Exemption 5 to "exempt those documents, and only those documents, that are normally privileged in the civil discovery context," including the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987). To meet the "inter-agency or intra-agency memorandums" threshold requirement, the "source [of the withheld records] must be a Government agency," *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 2 (2001), or the source of the withheld records could be a consultant if the agency sought outside advice and the consultant functioned as an agency employee in providing advice similar to that of an agency employee. *See Nat'l Inst. Of Military Justice v. DOD*, 404 F. Supp. 2d 325, 345 (D.D.C. 2005).

18.     **Deliberative Process Privilege**: The deliberative process privilege of Exemption 5 protects from disclosure records that reflect opinions, advice, recommendations, and other deliberations comprising part of a process by which federal governmental decisions and policies are formulated. *Klamath Water Users Protective Ass'n*, 532 U.S. at 8. The privilege protects pre-decisional, deliberative records that were created less than 25 years before the date on which the records were requested. 5 U.S.C. § 552(b)(5).

19.     The withheld document and attachments that were a part of the submission to OGE for a Certification of Divestiture were part of an on-going iterative decision-making process related to legal ethics divestiture requirements. The withheld documents are not the final certificate of

7

divestiture issued by OGE, nor are they or the information within the documents contained in their entirety in the final divestiture documents. As a result, this information is pre-decisional and deliberative because the decision-making process was on-going when these documents were generated. Moreover, they continue to be deliberative because they do not, in full, reflect the final determination of OGE.

20. Release of these documents would harm the Postal Service by having a chilling effect on Agency decision-making processes and cause public confusion about the actual Agency decision, which is not contained in the documents or reflected in the final determination of OGE. Agency officials would not be able to have a full and open discussion with executives concerning compliance with ethics regulations and other such legal requirements, if such conversations would be on full display to the public. Agency executives would be reluctant to share with accurate details with counsel and other agency ethics officials regarding what may or may not be required for legal compliance.

21. Documents relating to divestiture are also deliberative in nature because they are a part of an on-going iterative decision-making process related to the Postmaster General's divestiture and recusal requirements, under the ethics regulations. As with the above documents related to the OGE submittal for the Certification of Divestiture, the withheld documents are not part of the final certificate of divestiture issued by OGE, nor were they done in relation to the Postmaster General's public filing requirements. Instead these documents represent an iterative process, to determine the Postmaster General's actual divestiture and/or recusal requirements. Because this does not represent a final agency decision and is not in any way represented in a final agency decision, this information is pre-decisional and deliberative.

8

22. Release of these documents would harm the Postal Service by having a chilling effect on Agency decision-making processes and cause public confusion about the actual Agency decision, which is not contained in the documents or reflected in the final determination of either the Postal Service or OGE. Agency officials would not be able to have a full and open discussion with executives regarding compliance with ethics regulations and other such legal requirements, if such conversations would be on full display to the public. Agency executives would be reluctant to share with accurate details with counsel and other agency ethics officials regarding what may or may not be required for legal compliance.

23. **Attorney-Client Privilege**: The attorney-client privilege of Exemption 5 protects from disclosure confidential communications between an attorney and his or her client relating to a legal matter for which the client has sought professional advice. *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). A federal agency is a "client" protected by this privilege. *See Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997).

24. The request to OGE for a Certificate of Divestiture and associated attachments, are the product of legal advice provided to the Postmaster General by Postal Service lawyers, related to the OGE filings for a certificate of divestiture. To the extent that these document contain the product of confidential legal discussions between government attorneys and their client(s), the information was withheld.

25. Moreover, the documents related to recusal are the product of legal advice provided to the Postmaster General by Postal Service lawyers, related to the potential recusal of the PMG and the potentially necessary OGE filings for a certificate of divestiture. To the extent that this document contains the product of confidential legal discussions between government attorneys and their client(s), the information was withheld.

26.     **Exemption 6:** Under Exemption 6, the Postal Service may withhold "personnel files and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  This exemption covers all records and information about an individual and is not limited to intimate details or highly personal information. *See DOS v. Wash. Post Co.*, 456 U.S. 595, 600-602 (1982).  Exemption 6 protects records and information that expressly identify an individual, as well as records and information from which an individual's identity could be deduced. *Id.*  The personal privacy interests protected under Exemption 6 include, but are not limited to, an individual's interest in avoiding embarrassment, harassment, retaliation, annoyance or other adverse effect that would result from the public disclosure of the information pertaining to the individual. *See Judicial Watch, Inc. v. DOS*, 875 F. Supp. 2d 37, 46 (D.D.C. 2012) (collecting cases). Under Exemption 6, a requester may overcome an individual's privacy interest only if the requester shows that the requester seeks to advance a public interest and disclosure of the records will advance that public interest. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).  The only public interest cognizable under Exemption 6 is the extent to which public disclosure of the record or information would significantly contribute to public understanding of the federal government's operations or activities. *Id.*  Under Exemption 6, even a very slight privacy interest by an individual may be enough "to outweigh a negligible or non-existent public interest." *DOD v. FLRA*, 510 U.S. 487, 497, 500 (1994).

27.     The request for a certificate of divestiture, and associated attachments, are the product of an iterative process that does not represent the final determination of OGE. And to that extent, there are items listed in the request that are not reflected in the final version as approved by OGE. Those items that do not overlap represent the private interests of the Postmaster General

10

and are not subject to release absent some showing that the privacy interests are outweighed by the public interest. No such showing was made.

28. Additionally, the recusal documents withheld are not part of the final certificate of divestiture issued by OGE, nor were they created or done in relation to the Postmaster General's public filing requirements. Instead those documents represent an ongoing process to determine the Postmaster General's actual divestiture or recusal requirements. Because these documents relate to the Postmaster General's finances and do not relate to a public filing and the information is not found in any required public filings, the Postmaster General has a privacy interest in these documents, absent some showing that his privacy interest is by the public interest. No showing has been made.

## I. SEGREGABILITY

29. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

30. A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

31. There was no information that was found to be non-exempt; the Postal Service did not withhold any non-exempt information on the grounds that it was non-segregable.

## II. FORESEEABLE-HARM REQUIREMENT

32. Upon assuming office in 2009, then-President Barrack Obama issued direction to Executive Branch agencies on implementation of FOIA. Shortly thereafter, then-Attorney General Eric Holder implemented the President's directive by establishing the foreseeable harm requirement. *See* Memorandum from Eric Holder, Attorney Gen., U.S. Dep't of Justice, to Heads

of Exec. Dep't & Agencies (March 19, 2009), https://www.justice.gov/sites/ default/files/ag/legacy/2009/0624/foia-memo-march 2009.pdf. In his memorandum to Executive Branch agencies, Attorney General Holder explained that to "realize[ ]" the presumption of openness" "in practice," "an agency should not withhold information simply because it may so legally" or "merely because it can demonstrate, as a technical matter, that the records fall within the scope of a FOIA exemption. *Id.* at 1. Rather the Department of Justice would now "defend a denial of a FOIA request only if (1) the agency reasonably fores[aw] that disclosure would harm an interest protected by one [FOIA's] statutory exemptions, or (2) disclosure [was] prohibited by law. *Id.* at 2. Congress decided to make the "presumption of openness" established by the Presidential Memorandum in 2009 "a permanent requirement for agencies with respect to FOIA." *Id.* at 9; *see also* S. REP. NO. 114-4, at 7.

33. In order to establish foreseeable-harm, defendant must provide "context or insight into the specific decision-making process or deliberations at issue, and how they in particular would be harmed by disclosure." *Center for Investigative Reporting v. U.S. Customs and Border Protection and U.S. Dep't of Homeland Security*, 436 F. Supp. 3d. 90, 107 (D.D.C. 2019) citing *Judicial Watch, Inc. v. Dep't of Justice*, (Judicial Watch II), 2019 WL 4644029, at *5, see also *NRDC v. EPA*, 2019 WL 4142735 at *5 (S.D.N.Y., Aug. 30, 2019) (finding foreseeable-harm requirement satisfied where agency gave "context for the decision making processes in question and the harms that would reasonably ensue from disclosure of the material.").

34. As stated above, it is imperative that the Postal Service review panels are able to freely discuss ethics regulations and other such legal requirements, if such conversations would be on full display to the public. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information; agency

executives would be reluctant to share with accurate details with counsel and other agency ethics officials regarding what may or may not be required for legal compliance. This would result in a chilling effect on agency communications and interfere with USPS's ability to best advise their executives about ethics.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing declaration is true and correct. Executed in Washington, D.C., on February 3, 2021.

_____
Janine Castorina