UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES POSTAL SERVICE,**<br><br>Defendant. | Civil Action No. 20-2927 (JDB) |

**MEMORANDUM OPINION**

This case arises out of a request by plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") to defendant United States Postal Service ("USPS") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records relating to Postmaster General Louis DeJoy's potential conflicts of interest. USPS identified seven documents as responsive to CREW's request but withheld them all in full, citing various FOIA exemptions. CREW then filed suit to challenge USPS's withholding decisions as to three of the responsive documents and to seek any reasonably segregable material from documents over which a FOIA exemption has been properly asserted. Both parties have now moved for summary judgment. Because the FOIA exemptions invoked by USPS do not apply to the requested documents, the Court will grant plaintiff's motion.

**Background**

Louis DeJoy was appointed Postmaster General in June 2020. Compl. [ECF No. 1] ¶ 7. From the outset of his tenure, plaintiff asserts, DeJoy drew scrutiny over potential conflicts of

1

interest arising out of his investments in USPS contractors and competitors. Id. ¶¶ 8–9. For example, DeJoy's publicly available financial disclosures made at the time of his appointment show that he owned stock in USPS contractor XPO Logistics valued between $30 and $75 million, as well as between $100,000 and $250,000 of stock and stock options in USPS contractor/competitor Amazon. See Mem. in Supp. of Pl.'s Cross-Mot. for Summ. J. & Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") [ECF No. 12-1] at 4–5; Pl.'s Mem. Ex. 2, Office of Gov't Ethics ("OGE") Form 278e [ECF No. 12-4] at 19–20, 37, 77.

Federal law and regulations prohibit federal employees from participating on behalf of the government in any matter or decision that would directly bear on their personal financial interests or call into question their impartiality. See 18 U.S.C. § 208; 5 C.F.R. §§ 2635.501–502. Pursuant to 5 C.F.R. § 2635.502, employees may elevate potential conflicts issues to ethics officials to determine whether recusal is required. See OGE Memo DO-99-018 (Apr. 26, 1999), https://www2.oge.gov/web/oge.nsf/0/2BB7EADB68DA97ED852585BA005BEDC1/$FILE/do-99-018.pdf. Ethics officials, in turn, assist with conflict-of-interest compliance "by counseling employees regarding the significance of screening arrangements and recusal obligations." OGE Memo DO-04-05 at 1 (June 1, 2004), https://www.oge.gov/Web/oge.nsf/Legal%20Docs/F8A7059769DBCC6F852585BA005BED3C/$FILE/04x5.pdf?open.

CREW is a nonprofit government accountability organization that seeks to share information about public officials' activities and decision-making processes with citizens to promote integrity. Compl. ¶ 5. On August 11, 2020, CREW sent a FOIA request to USPS regarding DeJoy's financial holdings and conflict-of-interest obligations as the new Postmaster General, seeking:

1. All ethics agreements, records of recusals and screening arrangements pertaining to Postmaster General Louis DeJoy.

2. All other records identifying matters from which Mr. DeJoy must recuse.

3. All records of guidance provided to Mr. DeJoy regarding his recusal obligations by USPS ethics officials.

4. All other records identifying financial interests from which Mr. DeJoy or his spouse must divest.

5. All records of communications between Mr. DeJoy and USPS officials regarding his reported purchase of a "call option" for Amazon stock on June 24, 2020.

Id. ¶ 11. USPS denied the request on September 9, 2020, explaining that it had searched the Ethics Office and Postmaster General's Office and found seven responsive documents—comprising thirteen pages—corresponding to items 1, 3, and 4 of CREW's request, but would withhold them all under FOIA Exemptions 3, 5, and 6. Id. ¶¶ 14–16; Vaughn Index [ECF No. 11-4]; Def.'s Statement of Material Facts as to Which There Is No Genuine Issue ("Def.'s SMF") [ECF No. 11-1] ¶¶ 4–12; Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") [ECF No. 11-2] at 8; Decl. of Janine Castorina ("Castorina Decl.") [ECF No. 11-3] ¶¶ 11–28; Pl.'s Resp. to Def.'s SMF & Statement of Undisputed Material Facts in Supp. Of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s SMF") [ECF No. 12-2] ¶¶ 4–12. As detailed further below, those exemptions shield materials from disclosure where they are protected by statute or legal privilege, or where they contain personal information for which the individual's privacy interest outweighs the public's interest in disclosure.

The responsive records fall generally into two categories. Four of the documents, spanning nine pages, pertain to a request for a certificate of divestiture filed on DeJoy's behalf. Vaughn Index at 1–8; Compl. ¶ 5; Def.'s SMF ¶ 11. Federal regulations governing financial conflicts of interest for executive branch employees may require an employee to divest from certain assets and,

3

if the divestiture results in capital gains for the employee, he or she may obtain a certificate of divestiture "to minimize the [tax] burden" of complying with conflict-of-interest requirements. See 5 C.F.R. § 2634.1001.  As part of this process, a request was submitted to the Office of Government Ethics ("OGE") via email attaching a list of DeJoy's holdings, a completed Request for Certificate of Divestiture Form filled out by DeJoy, and a memorandum from DeJoy regarding the request.  Vaughn Index at 1–8.  The remaining three documents relate to DeJoy's recusal from USPS matters for which he had a conflict of interest.  The recusal documents consist of three pages of memoranda establishing recusal and screening arrangements between DeJoy and the USPS Ethics Office and Katherine Sigler, Acting Secretary of the Board of Governors, and one page of guidance provided by USPS ethics attorney Natalie Bonanno to DeJoy regarding his recusal obligations.  Id. at 1, 9–13; see also Compl. ¶ 15; Def.'s SMF ¶ 11; Pl.'s SMF ¶ 11; Pl.'s Mem. at 6.

On September 10, 2020, CREW filed an administrative appeal challenging USPS's withholding decision, asserting that the original search was inadequate and that the records in question were improperly withheld.  Compl. ¶ 18; Def.'s SMF ¶ 13.  USPS affirmed its initial decision.  Pl.'s Mem. at 7 (citing Castorina Decl. ¶ 9).  Meanwhile, on October 9, the OGE issued and published a final Certificate of Disclosure for XPO Logistics and certain other stock in response to DeJoy's request, reflecting his divestment from some but not all of the assets identified in the withheld materials.  See Pl.'s Mem. at 6 & n.2 (noting the non-XPO Logistics Certificate was issued October 14); Def.'s Mem. at 18–19 (noting that "there are items listed in the request [for divestiture] that are not reflected in the final version as approved by OGE"); Castorina Decl. ¶ 27.

Nevertheless, CREW filed the instant action on October 13, challenging the adequacy of USPS's search and seeking an order from this Court directing USPS to disclose all seven documents identified as responsive. Compl. at 5. To the extent any portions of the challenged records were properly exempt from disclosure, CREW asserts that USPS must segregate and release all nonexempt portions rather than withholding the documents in full. Pl.'s Mem. at 29–30. CREW's complaint also seeks costs and attorneys' fees for this action. Compl. at 5.

On February 3, 2021, USPS moved for summary judgment, arguing that it had met its obligation to locate responsive records and apply relevant FOIA exemptions. Def.'s Mot. for Summ. J. [ECF No. 11] at 1. On March 4, 2021, CREW cross-moved for summary judgment as to the three recusal-related documents on the basis that USPS misapplied Exemptions 3 and 5 and undervalued the public interest in disclosure while overvaluing DeJoy's privacy interest in applying Exemption 6. See Pl.'s Cross-Mot. for Summ. J. [ECF No. 12]; Pl.'s Mem. At 1–2. Through its motion, CREW dropped its challenge to the adequacy of USPS's search. Pl.'s Mem. at 8 & n.3. And regarding the documents pertaining to DeJoy's request for a certificate of divestiture, CREW concedes that some material was properly withheld pursuant to the deliberative process privilege but insists that USPS has not complied with its obligation to segregate and produce non-exempt portions of those documents. Id. The parties' cross-motions have now been fully briefed and are ripe for this Court's review.

## Legal Standard

"FOIA cases typically and appropriately are decided on motions for summary judgment." Georgacarakos v. Fed. Bureau of Investigation, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (citation omitted). To prevail on summary judgment, a party must show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

FOIA gives citizens the opportunity to review "an agency's performance of its statutory duties," and to know "what their government is up to." U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 772–73 (1989). "It is the agency's burden to prove that it has complied with its obligations under FOIA." Democracy Forward Found. v. Ctrs. for Medicare & Medicaid Servs., Civ. No. 18-635 (JDB), 2019 WL 6344935, at *1 (D.D.C. Nov. 27, 2019) (citing Dep't of Just. v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989)). The statute requires agencies to release records responsive to a request for production, see 5 U.S.C. § 552(a)(3)(A), but also includes nine exemptions which permit an agency to withhold a responsive record, id. § 552(b). When seeking summary judgment, an agency may prevail if it proves that the "requested material falls within a FOIA exemption," but it may not "seek[] to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F. 3d 26, 32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

## Analysis

I.     **FOIA Exemption 3**[1]

Exemption 3 allows an agency to shield material from disclosure when a "statute requires that . . . matters be withheld from the public in such a manner as to leave no discretion on the issue . . . or establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Here, the parties agree that the disclosure-exemption provision

---

[1] CREW argues that by failing to respond to its arguments regarding Exemption 3, USPS has effectively conceded those points. See Pl.'s Reply in Supp. of Cross-Mot. for Summ. J. ("Pl.'s Reply") [ECF No. 18] at 2–3 (citing Wannall v. Honeywell, Inc., 775 F.3d 425, 428 (D.C. Cir. 2014)). Because the Court finds that Exemption 3 is inapplicable, it will resolve the merits of the issue without addressing CREW's concession argument.

of the Postal Reorganization Act ("PRA") is appropriately categorized as an Exemption 3 statute. See Def.'s Mem. at 9; Pl.'s Mem. at 9.  That provision authorizes withholding "information of a commercial nature, including trade secrets, whether or not obtained from a person outside the Postal Service, which under good business practice would not be publicly disclosed." 39 U.S.C. § 410(c)(2).  The parties disagree, however, as to whether the withheld material constitutes "information of a commercial nature" subject to withholding.[2]

The regulations promulgated under the Postal Reorganization Act specify that "[i]nformation is of a commercial nature if it relates to commerce, trade, profit, or the Postal Service's ability to conduct itself in a businesslike manner." 39 C.F.R. § 265.14(b)(3).  Such business information is thus distinct from information relating to USPS's role as a government entity.  In considering whether information is commercial for purposes of disclosure, USPS must consider, as relevant here, whether it "[r]elates to products or services subject to economic competition," "[r]elates to the Postal Service's activities that are analogous to a private business in the marketplace," "[w]ould be of potential benefit to . . . entities in economic competition with the Postal Service," or "[i]s the result of negotiations, agreements, contracts or business deals between the Postal Service and a business entity." Id. § 265.14(b)(3)(i)(A)–(C), (E).  Conversely, USPS must also consider whether the requested information "[r]elates primarily to the Postal Service's governmental functions or its activities as a provider of basic public services," presumably because such information is subject to public inspection, unlike the types of commercial information that must be withheld to protect USPS's business interests. See id. § 265.14(b)(3)(i)(F); id. § 265.14(b)(3)(ii) (listing examples of the types of business-related commercial information not subject to disclosure).

---

[2] USPS asserts FOIA Exemption 3 over all documents except for the single page of recusal guidance. See generally Vaughn Index (identifying the exemptions claimed over each responsive document).

Courts in this District have largely followed this dichotomy in cases interpreting the disclosure-exemption provision of the PRA, recognizing that ultimately the PRA's purpose is to enable USPS to "function more like a modern, competitive business." DBW Partners, LLC v. U.S. Postal Serv., Civ. A. No. 18-3127 (RC), 2020 WL 2064082, at *5 (D.D.C. Apr. 28, 2020) (citing Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv., 742 F. Supp. 2d 76, 82 (D.D.C. 2010)). For example, courts have held that business information relating to employee compensation and decisions to "improve customer service, generate revenue, manage costs, and enhance a performance-based culture" may be properly withheld. See Am. Postal Workers Union, 742 F. Supp. 2d at 81. So too may information that speaks directly to the specifics of USPS's contract with another shipping logistics company. See Airline Pilots Ass'n Int'l v. U.S. Postal Serv., Civ. A. No. 03-2384 (ESH), 2004 WL 5050900, at *5–7 (D.D.C. June 24, 2004). A common thread across these cases is that commercial records contain the kind of information that a private company not subject to FOIA would seek to protect to maintain a competitive advantage. Unsurprisingly, then, "[t]he majority of cases which have upheld USPS's withholding of information under § 410(c)(2) have concerned proprietary information." Carlson v. U.S. Postal Serv., 504 F.3d 1123, 1129 (9th Cir. 2007) (collecting cases).

Here, the withheld documents detailing DeJoy's financial disclosures, recusal and divestiture obligations, and related communications with OGE are government-specific documents regarding USPS's accountability to the public, not its business operations. By documenting the postmaster general's financial ties in an effort to avoid conflicts of interest and maintain public trust in the agency, USPS is acting in its "public character" by providing a governmental service accountable to the taxpayers who fund its operations. Cf. U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd., 540 U.S. 736, 747 (2004). As CREW points out, the requested materials thus veer

away from proprietary business data like "pricing, rates, contract terms, and compensation for individual employees," which are exempt under FOIA.  Pl.'s Mem. at 11 & n.5 (citing, inter alia, Wickwire Gavin, P.C. v. U.S. Postal Serv., 356 F.3d 588, 590–91 (4th Cir. 2004)).  The materials at issue here may not be as easy to characterize as non-commercial data held disclosable by other courts like "names, addresses, telephone numbers, regular business hours, and final collection times" for post offices.  See Carlson, 504 F.3d at 1129–30); Nat'l Western Life Ins. Co. v. United States, 512 F. Supp. 454, 462 (N.D. Tex. 1980)).  But there can be little doubt that the processual documentation of DeJoy's ethical compliance "reflect[s] directly on 'what the government is up to'—the core of what FOIA was designed to address."  DBW Partners, 2020 WL 2064082, at *11 (citation omitted).

While USPS attempts to justify its assessment that these records are exempt commercial information, its arguments are conclusory and self-serving, based exclusively on the rationale of its Chief Privacy and Records Management Officer without any external support.  See Def.'s Mem. at 11–12 (citing Castorina Decl. ¶¶ 13–16).  The agency argues that the records sought would not be disclosed "under good business practice[s]" because doing so "would provide another company with a competitive advantage over the Postal Service."  Id.  USPS also claims it would have difficulty attracting qualified candidates for agency positions if it were required to disclose their financial information obtained in connection with ethics compliance.  Id. at 12.  For one, "[t]hat it may not be good business practice to disclose the information requested does not, by itself, make it commercial in nature."  Carlson, 504 F.3d at 1130.  As discussed above, the requested materials were only generated because of the ethical rules applicable to federal employment and are not the type of commercial information the PRA seeks to protect.  Moreover, USPS fails to substantiate its assertions with any evidence or even conjecture as to how a competitor could exploit the

requested documents to USPS's detriment. And the Court is skeptical whether qualified candidates would be deterred from seeking employment with USPS if the requested materials were made public: as CREW points out, "[a]gencies routinely disclose senior officials' recusal and screening agreements through FOIA and otherwise." Pl.'s Mem. at 3 & n.1 (listing and providing links to publicly available recusal documents for several high-ranking executive branch officers). Because the Court finds that the requested materials fall outside the PRA's definition of commercial information, they cannot be shielded from FOIA disclosure under Exemption 3.

## II.     FOIA Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). To qualify for this exemption, a document's "source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." Dep't of Interior & Bureau of Indian Affs. v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001). Here, there is no dispute that the source of the records is a government agency, but USPS argues that all of the requested records are protected by the attorney-client and/or deliberative process privileges. The Court will review each in turn.

### A. Attorney-Client Privilege

USPS invokes the attorney-client privilege in relation to each of the disputed documents. This privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977). The purpose of the privilege is "to promote open communication between attorneys and clients so that fully informed legal advice

10

may be given." Nat'l Council of La Raza v. Dep't of Just., 411 F.3d 350, 360 (2d Cir. 2005) (citation omitted).

USPS argues that this Court ought to infer confidentiality because DeJoy, acting as "the Government," "is dealing with its attorneys as would any private party seeking advice to protect personal interests." Def.'s Mem. at 13 (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980)). USPS claims that all of the requested documents—both "[t]he request to OGE for a Certificate of Divestiture and associated attachments" and "any documents related to recusal"—are "the direct product of legal advice provided . . . between government attorneys and their client, the Postmaster General." Id. at 13–14. CREW counters that the attorney-client privilege does not protect communications between the ethics counsel of a government agency and an agency employee because the "client" for privilege purposes in that dynamic is the agency itself. Pl.'s Mem. at 22. The documents at issue then, CREW argues, simply capture unprivileged communications between USPS's attorneys and an agency official in relation to that official's personal legal obligations and liabilities vis-à-vis the agency's recusal requirements. See id. at 22–24.

CREW's argument finds support in USPS's employee manual, which states unequivocally that "[d]isclosures made by an employee to an agency ethics official are not protected by the attorney-client privilege." Postal Service Employee Labor and Relations Manual § 662.11, https://bit.ly/2NrUYPM. Furthermore, the regulations of the OGE, which oversees the ethics requirements for executive branch agency officials, provide that "[a] current or former employee who discloses information to an agency ethics official, to a Government attorney, or to an employee of the Office of Government Ethics does not personally enjoy an attorney-client privilege with respect to such communications." 5 C.F.R. § 2641.105(e). The plain text of these

11

provisions makes clear that the attorney-client privilege does not apply to communications between DeJoy and USPS ethics counsel or OGE attorneys.

Even if an attorney-client relationship did exist between DeJoy and agency ethics counsel, the privilege could not shield the withheld documents "simply because they are the product of an attorney-client relationship." Mead Data, 566 F.2d at 253. Rather, the party invoking the privilege must also establish that the information itself is confidential and was not shared with a third party. Id. And as USPS itself admits, "[t]he privilege 'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" Def.'s Mem. at 13 (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)). Having presumably familiarized himself with the regulations quoted above, DeJoy could not possibly have relied on an expectation of attorney-client privilege in submitting his requests to the OGE. Further, DeJoy's filings with the OGE would have been shared with third parties outside of USPS in compliance with the Ethics in Government Act of 1978, which requires high-level government officials, including the Postmaster General, to disclose their financial interests to ensure public trust in their integrity. See Ethics in Government Act of 1978, 5 U.S.C. app. § 101(f)(6); Postal Service Employee Labor and Relations Manual § 662.2; Management Instruction EL-660-97-1, Financial Disclosure Report Procedures for the U.S. Postal Service at 2 (Jan. 30, 1997) (requiring the Postmaster General to disclose personal financial interests). Without establishing a plausible attorney-client relationship between DeJoy and ethics counsel or accounting for the high likelihood of third-party disclosure of the documents at issue, USPS cannot invoke the attorney-client privilege to shield any of the requested documents under FOIA Exemption 5.

### B. Deliberative Process Privilege

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Buzzfeed, Inc. v. Dep't of Just., 419 F. Supp. 3d 69, 75 (D.D.C. 2019) (quoting Abtew v. U.S. Dep't of Homeland Sec., 808 F.3d 895, 898 (D.C. Cir. 2015)). "The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made." In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). Rather, records withheld under the deliberative process privilege must be both "predecisional and deliberative." Mapother v. Dep't of Just., 3 F.3d 1533, 1537 (D.C. Cir. 1993). "A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made. Material is deliberative if it reflects the give-and-take of the consultative process." Petroleum Info. Corp. v. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (citations and internal quotations marks omitted).

CREW does not challenge USPS's deliberative-process claims as to the formal request for a certificate of disclosure submitted on DeJoy's behalf or the attachments thereto. See Pl.'s Mem. at 8 n.3. It does, however, challenge USPS's invocation of the privilege as to the withheld recusal memoranda, asserting that those documents "embody final agency decisions regarding Mr. DeJoy's recusal and screening requirements." Pl.'s Mem. at 16.[3] USPS insists that all of the documents were properly withheld and that the recusal memoranda, too, reflect predecisional, deliberative agency communications. See Def.'s Mem. at 14–17; Castorina Decl. ¶ 19; Def.'s Reply in Further Supp. of Its Mot. for Summ. J. & in Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Def.'s Reply") [ECF No. 16] at 5–10. According to USPS, only the "final certificate of

---

[3] USPS did not assert the deliberative-process privilege over the recusal guidance document, asserting only the attorney-client privilege over that document.

13

divestiture issued by OGE" and "the documents contained in their entirety in the final divestiture documents" represent the final decision of the agency, and everything else—including the recusal memoranda—were merely "part of an on-going iterative decision-making process." See Def.'s Mem. at 15.

CREW has the better of this argument. Indeed, it is clear from USPS's own descriptions that the recusal memoranda represent final—if impermanent—agency decisions. Both memoranda are entitled "Notification of Commitment to Recuse and Screening Arrangement" and purport to "establish[] . . . recusal and screening arrangement[s]" regarding certain entities. See Vaughan Index at 9, 11. That the memoranda were "notif[ying]" ethics counsel of "commitments" and "arrangements" DeJoy had already undertaken pursuant to his ethics obligations strongly implies that decisions underlying those commitments had already been made. Indeed, in USPS's reply brief, where it details its "financial conflict of interest process and timeline of events," decisional language abounds around the disputed memoranda. USPS states that DeJoy submitted the first of the two recusal memoranda after "the determination was made . . . that Mr. DeJoy should submit" it. Def.'s Reply at 4. Likewise, he "submitted a subsequent memorandum . . . for a different asset, which was determined to pose a conflict" as well. Id. at 4–5. USPS describes the recusal memoranda as "interim opinions and decisions put into place while the Postal Service" made its "final decision" on divestiture. Def.'s Reply at 7–9. And before the divestiture decision was finally made, "[t]he recusal memoranda remained in place in accordance with 5 C.F.R. § 2635.403(d)." Id. at 5. Just because the recusal memoranda may have been superseded by the

subsequent certificate of divestiture process does not mean they were predecisional for purposes of the deliberative-process privilege.[4]

When considering the finality of a record, courts review the "function of the document[] in issue in the context of the administrative process which generated" it. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 138 (1975).  A document with "operative and controlling effect" is not subject to the privilege, Coastal States, 617 F.2d at 867–69, even if it may be rendered obsolete by a subsequent pronouncement, see Sears, 421 U.S. at 158 n. 25 ("[T]he possibility that the decision reached . . . may be overturned . . . does not affect its finality for [deliberative process] purposes."). The question becomes whether the decision leads to "direct and appreciable legal consequences." U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., 141 S. Ct. 777, 787 (2021) (quoting Bennett v. Spear, 520 U.S. 154, 178 (1997)).  Such was plainly the case here: while the recusal memoranda "remained in place," DeJoy was prohibited from participating in decisions affecting the covered assets and "did in fact recuse himself" from matters while the agency considered his divestiture obligations.  Def.'s Reply at 9; see also Pl.'s Mem. at 18–19.  USPS insists that "the agency never treated these documents as it would a final decision document (i.e., public release)," but all that appears to mean is that USPS chose not to spontaneously publish them.  Def.'s Reply at 9.

CREW comes closer to the mark when it characterizes the recusal records as a "series of discrete, subsidiary decisions, as well as records memorializing those decisions."  Pl.'s Reply at 4; see also Decl. of Jessica Brewster-Johnson ("Brewster-Johnson Decl.") [ECF No. 16-1] ¶¶ 6–8

---

[4] All of this language also makes clear that the recusal memoranda are not "deliberative" either.  A "notification" of a "commitment" or "arrangement" hardly bespeaks the "give and take of the consultative process" that constitutes agency policymaking.  See Buzzfeed, 419 F. Supp. 3d at 77 (quoting Coastal States, 617 F.2d at 866). Indeed, at least one other court in this District has rejected claims that the deliberative-process privilege protects an agency employee's submissions to ethics officials made for the purpose of complying with conflicts obligations. Id. ("[The agency] was not formulating policy at all. Its ethics officials were merely trying to assist in the accurate completion of [its employee's] financial disclosure forms in compliance with the Ethics in Government Act and OGE policy.").

(identifying recusal as one of "several remedies that an agency may employ to address a potential conflict," with divestiture available "if the employee's participation in the matter is so crucial that he may not recuse himself"). The recusal remedy, adopted by DeJoy after identification of potential conflicts of interest, falls within the "litany of subsidiary decisions" behind the agency's ultimate action, which in and of themselves constitute final action. See Judge Rotenberg Educ. Ctr. v. FDA, 376 F. Supp. 3d 47, 67 (D.D.C. 2019); see also Pl.'s Reply at 4. Adopting USPS's interpretation of the deliberative process privilege would "effectively shield[] all agency action from review without accounting for any subsidiary agency decisions" and undermine the integrity of the FOIA process as a means of ensuring government accountability. 100Reporters LLC v. Dep't of Just., 248 F. Supp. 3d 115, 153 (D.D.C. 2017). Hence, because the recusal memoranda are not predecisional within the meaning of the deliberative-process privilege, Exemption 5 cannot shield them from disclosure.

### III.   FOIA Exemption 6

Exemption 6 allows an agency faced with a FOIA request to shield "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). When addressing Exemption 6, courts balance the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." Lepelletier v. FDIC, 164 F.3d 37, 47 (D.C. Cir. 1999) (quoting Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 874 (D.C. Cir. 1989)). USPS invokes this privilege to withhold the recusal memoranda, asserting that DeJoy's financial records are "clearly a type of personal information," that their disclosure would entail an unjustified intrusion of DeJoy's privacy, and that they fall within the definition of "similar files" which should be afforded

16

the same protection as personnel or medical information. Def.'s Mem. at 17–19. "[S]imilar files" include "government records on an individual which can be identified as applying to that individual." U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982) (citation omitted).

As a threshold matter, USPS's position on Exemption 6 is self-contradictory. On one hand, USPS claims the contested "documents contain financial information about the Postmaster General, which is clearly a type of personal information" in which he has a privacy interest. Def.'s Mem. at 18–19. But at the same time, USPS concedes that "all of Mr. DeJoy's financial information is already publicly available via his OGE 278e and subsequent OGE 278-T forms," the financial disclosure reports mandated for certain high-level government officials. Def.'s Reply at 11 (emphasis added). USPS goes on to acknowledge that "nothing in the documents at issue contribute[s] any more understanding" regarding DeJoy's financial assets. Def.'s Reply at 12. It is unclear to the Court, therefore, just what USPS purports to shield from disclosure under Exemption 6.

With regard to already-public information, "[o]ne can have no privacy interest" if "the person asserting his privacy is himself responsible for placing that information into the public domain." CREW v. U.S. Dep't of Just., 840 F. Supp. 2d 226, 233 (D.D.C. 2012). To the extent that DeJoy has already disclosed all relevant personal information, USPS's privacy claims are nullified, and the agency may not withhold any information overlapping with publicly available records under Exemption 6. To the extent the withheld records contain nonpublic information, the Court will assess the public interest in accessing those materials. See, e.g., Lepelletier, 164 F.3d at 46–47.

Although it is true that disclosing "information that reveals little or nothing about an agency's own conduct" does not necessarily further the core purpose of FOIA, Beck v. U.S. Dep't

17

of Just., 997 F.2d 1489, 1493 (D.C. Cir. 1993) (citation omitted), there is nevertheless a strong public interest in information relating to public officials' potential conflicts of interest. Indeed, the Ethics in Government Act, under which many of the records at issue here were generated, demonstrates "Congress' general belief that public disclosure of conflicts of interests is desirable despite its cost in loss of personal privacy." Wash. Post Co. v. HHS, 690 F.2d 252, 265 (D.C. Cir. 1982). Because of the potential for "[u]nscrupulous" actors to steer government funds in their own personal financial interests, "the public has a singularly strong interest in disclosure of" conflicts of interest. Id. at 264.

USPS attempts to minimize that interest, emphasizing that there are no "investigations or allegations of abuse stemming from [Dejoy's suspected] conflicts of interest." Def.'s Reply at 11. But that is not quite accurate: the media has reported on possible conflicts stemming from DeJoy's disclosure of his stake in USPS contractors and competitors. Marshall Cohen, Financial Disclosures Reveal Postmaster General's Business Entanglements and Likely Conflicts of Interest, Experts Say, CNN (Aug. 12, 2020), https://cnn.it/3shfq4n. And in response to a request from Senate Democrats, the USPS Inspector General did launch an investigation into DeJoy's conflicts last year. Marshall Cohen & Kristen Holmes, Postal Service Inspector General Reviewing DeJoy's Policy Changes and Potential Ethics Conflicts, CNN (Aug. 14, 2020), https://www.cnn.com/2020/08/14/politics/postal-service-inspector-general-reviewing-dejoy/index.html.[5] These public inquiries into DeJoy's financial portfolio denote a public interest in materials relating to his potential conflicts based on "more than mere speculation," which

---

[5] Although apparently unrelated to his potential conflicts of interest, DeJoy is currently under investigation by the FBI in connection with his past campaign fundraising activity. See Matt Zapotosky and Jacob Bogage, FBI Investigating Postmaster General Louis DeJoy in Connection with Past Political Fundraising, Wash. Post (June 3, 2021), https://www.washingtonpost.com/national-security/louis-dejoy-fbi-investigation/2021/06/03/4e24e122-c3d3-11eb-93f5-ee9558eecf4b_story.html.

therefore warrants "permit[ting] the public to decide for itself whether government action" on DeJoy's watch "is proper." Wash. Post, 690 F.2d at 264.  Hence, USPS may not invoke Exemption 6 to withhold the recusal memoranda.  To the extent any truly private information appears in the recusal documents—or, consistent with the segregability discussion infra, in the certificate of divestiture documents—such as DeJoy's Social Security number, home address, or personal phone number, USPS may redact it pursuant to Exemption 6.

## IV.     Segregability Obligations

Finally, the parties disagree as to whether USPS has effectively complied with its "obligation to disclose reasonably segregable material" that can be released from a broader record as to which a FOIA exemption has been asserted.  Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007); see also 5 U.S.C. § 552(b).  As discussed above, the Court finds that the recusal documents are not exempt from disclosure and must be produced.  The main dispute over segregability involves the documents related to the request for a certificate of divestiture; CREW acknowledges a deliberative-process privilege over some, but not all, of those withheld records.

USPS is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." Sussman, 494 F.3d at 1117.  However, that presumption is rebutted when the requesting party "'produce[s] evidence that would warrant a belief by a reasonable person' that segregable material exists." Bloche v. Dep't of Def., 279 F. Supp. 3d 68, 82 (D.D.C. 2017) (quoting Sussman, 494 F. 3d at 1117)).  CREW has carried its production burden to rebut the presumption of compliance.  At the very least, the information which is already publicly available through DeJoy's OGE filings must be segregated and released. Pl.'s Reply at 13 (citing Hardy v. ATF, 243 F. Supp. 3d 155, 177 (D.D.C. 2017)); see also Army Times Publ'g Co. v. Dep't of Air Force, 998 F.2d 1067, 1068 (D.C. Cir. 1993)).  The Court will also order USPS

to re-examine the withheld documents pertaining to the certificate of divestiture and apply the claimed exemptions more narrowly, redacting or—if warranted—withholding them consistent with this Memorandum Opinion.  Given that the total universe of responsive documents is only thirteen pages, the Court is not concerned that this ruling will require USPS "to commit significant time and resources to the separation of disjointed" portions of otherwise withheld records.  Mead Data, 566 F.2d at 261 n.55.

## Conclusion

For the foregoing reasons, the Court will grant plaintiff's Cross-Motion for Summary Judgment, deny defendant's Motion for Summary Judgment, and order USPS to produce the recusal documents as well as any non-exempt portions of the certificate of divestiture documents in a timely manner.  A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:  August 17, 2021